# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0766V
UNPUBLISHED

| | |
|---|---|
| MARK D SCARLETTE,<br><br>                     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br>Filed: May 19, 2022<br><br>Special Processing Unit (SPU);<br>Damages Decision Based on Proffer;<br>Influenza (Flu) Vaccine; Guillain-<br>Barre Syndrome (GBS) |

*Nancy Routh Meyers*, Turning Point Litigation, Greensboro, NC, for Petitioner.

*Colleen Clemons Hartley*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On May 31, 2018, Mark D. Scarlette filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain-Barré Syndrome ("GBS") as the result of an influenza ("flu") vaccination administered on November 8, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

On May 3, 2019, a ruling on entitlement was issued finding Petitioner entitled to compensation. On May 19, 2022, Respondent filed a proffer on award of compensation ("Proffer") indicating Petitioner should be awarded a lump sum payment of $444,619.80, representing compensation for life care expenses expected to be incurred during the first year after judgment ($24,893.57), lost earnings ($212,203.99), pain and suffering

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

($205,000.00), past unreimbursable expenses ($2,522.24), and an amount sufficient to purchase an annuity contract subject to the conditions described in the attached Proffer and Appendix. Proffer at 3. In the Proffer, Respondent represented that Petitioner agrees with the proffered award. *Id.* Based on the record as a whole, I find that Petitioner is entitled to an award as stated in the Proffer.

**Pursuant to the terms stated in the attached Proffer, I award Petitioner the following:**

A.  **A lump sum payment of $444,619.80, (representing compensation for life care expenses expected to be incurred during the first year after judgment ($24,893.57), lost earnings ($212,203.99), pain and suffering ($205,000.00), and past unreimbursable expenses ($2,522.24)), in the form of a check payable to petitioner, Mark D. Scarlette.**

B. **An amount sufficient to purchase an annuity contract subject to the conditions described in the attached Proffer and Appendix, that will provide payments for the life care items contained in the life care plan, as illustrated by the chart at Tab A (Appendix A), attached hereto, paid to the life insurance company from which the annuity will be purchased.**

These amounts represent compensation for all damages that would be available under Section 15(a). The Clerk of Court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| MARK D. SCARLETTE, | |
| Petitioner, | No. 18-766V |
| v. | Chief Special Master Corcoran |
| | ECF |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

### RESPONDENT'S PROFFER ON AWARD OF COMPENSATION

On May 31, 2018, Mark D. Scarlette ("petitioner") filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act" or "Act"), alleging that he suffered Guillain-Barré Syndrome ("GBS") as a result of receiving an influenza ("flu") vaccination administered on November 8, 2016. Petition at 1. On May 2, 2019, the Secretary of Health and Human Services ("respondent") filed his Rule 4(c) Report conceding that petitioner's claim satisfies the requirements necessary to qualify as a Table injury under the Vaccine Injury Table. ECF No. 25. On May 3, 2019, the Chief Special Master issued a Ruling on Entitlement finding petitioner entitled to compensation. ECF No. 27.

I.   **Items of Compensation**

   A.   Life Care Items

Respondent engaged life care planner Laura Fox, MSN, BSN, RN, CLCP, and petitioner engaged life care planner Cynthia Wilhelm, Ph.D., to provide an estimation of petitioner's future vaccine-injury related needs. For the purposes of this proffer, the term "vaccine related" is as described in respondent's Rule 4(c) Report. All items of compensation identified in the life care

plan are supported by the evidence, and are illustrated by the chart entitled Appendix A: Items of Compensation for Mark D. Scarlette, attached hereto as Tab A. Respondent proffers that petitioner should be awarded all items of compensation set forth in the life care plan and illustrated by the chart attached at Tab A.[1] Petitioner agrees.

      B.      <u>Lost Earnings</u>

The parties agree that based upon the evidence of record, Mark D. Scarlette has suffered a loss of earnings. Therefore, respondent proffers that petitioner should be awarded lost earnings as provided under the Vaccine Act, 42 U.S.C. § 300aa-15(a)(3)(A). Respondent proffers that the appropriate award for Mark D. Scarlette's lost earnings is $212,203.99. Petitioner agrees.

      C.      <u>Pain and Suffering</u>

Respondent proffers that petitioner should be awarded $205,000.00 in actual and projected pain and suffering. This amount reflects that any award for projected pain and suffering has been reduced to net present value. *See* 42 U.S.C. § 300aa-15(a)(4). Petitioner agrees.

      D.      <u>Past Unreimbursable Expenses</u>

Evidence supplied by petitioner documents his expenditure of past unreimbursable expenses related to his vaccine-related injury. Respondent proffers that petitioner should be awarded past unreimbursable expenses in the amount of $2,522.24. Petitioner agrees.

**II.**    **<u>Form of the Award</u>**

The parties recommend that the compensation provided to petitioner should be made through a combination of lump sum payments and future annuity payments as described below,

---

[1] The chart at Tab A illustrates the annual benefits provided by the life care plan. The annual benefit years run from the date of judgment up to the first anniversary of the date of judgment, and every year thereafter up to the anniversary of the date of judgment.

and request that the Chief Special Master's decision and the Court's judgment award the following:[2]

A. A lump sum payment of $444,619.80, representing compensation for life care expenses expected to be incurred during the first year after judgment ($24,893.57), lost earnings ($212,203.99), pain and suffering ($205,000.00), and past unreimbursable expenses ($2,522.24), in the form of a check payable to petitioner, Mark D. Scarlette.

B. An amount sufficient to purchase an annuity contract,[3] subject to the conditions described below, that will provide payments for the life care items contained in the life care plan, as illustrated by the chart at Tab A, attached hereto, paid to the life insurance company[4] from which the annuity will be purchased.[5] Compensation for Year Two (beginning on the first anniversary of the date of judgment) and all subsequent years shall be provided through

---

[2] Should petitioner die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief. In particular, respondent would oppose any award for future medical expenses, future lost earnings, and future pain and suffering.

[3] In respondent's discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

[4] The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

    a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

    b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

    c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

    d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

3

respondent's purchase of an annuity, which annuity shall make payments directly to petitioner, Mark D. Scarlette, only so long as petitioner is alive at the time a particular payment is due. At the Secretary's sole discretion, the periodic payments may be provided to petitioner in monthly, quarterly, annual or other installments. The "annual amounts" set forth in the chart at Tab A describe only the total yearly sum to be paid to petitioner and do not require that the payment be made in one annual installment.

1. Growth Rate

Respondent proffers that a four percent (4%) growth rate should be applied to all non-medical life care items, and a five percent (5%) growth rate should be applied to all medical life care items. Thus, the benefits illustrated in the chart at Tab A that are to be paid through annuity payments should grow as follows: four percent (4%) compounded annually from the date of judgment for non-medical items, and five percent (5%) compounded annually from the date of judgment for medical items. Petitioner agrees.

2. Life-contingent annuity

Petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as he, Mark D. Scarlette, is alive at the time that a particular payment is due. Written notice shall be provided to the Secretary of Health and Human Services and the Life Insurance Company within twenty (20) days of Mark D. Scarlette's death.

3. Guardianship

Petitioner is a competent adult. Evidence of guardianship is not required in this case.

---

[5] Petitioner authorizes the disclosure of certain documents filed by the petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

4

### III. Summary of Recommended Payments Following Judgment

A. Lump Sum paid to petitioner, Mark D. Scarlette: **$444,619.80**

B. An amount sufficient to purchase the annuity contract described above in section II.B.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO
Acting Director
Torts Branch, Civil Division

HEATHER E. PEARLMAN
Deputy Director
Torts Branch, Civil Division

TRACI R. PATTON
Assistant Director
Torts Branch, Civil Division

*s/Colleen C. Hartley*
COLLEEN C. HARTLEY
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box 146, Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 616-3644
Email: colleen.hartley@usdoj.gov

Dated: May 19, 2022

**Appendix A:  Items of Compensation for Mark D. Scarlette**                Page 1 of 1

| ITEMS OF COMPENSATION | G.R. | * | M | Lump Sum Compensation Year 1 | Compensation Years 2-5 | Compensation Year 6 | Compensation Year 7 | Compensation Years 8-Life |
|---|---|---|---|---|---|---|---|---|
| | | | | 2022 | 2023-2026 | 2027 | 2028 | 2029-Life |
| Medicare Part B Premium | 5% | | M | 2,041.20 | 2,041.20 | | | |
| Medicare Part B Deductible | 5% | * | | | | | | |
| Neurologist | 5% | * | | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 |
| Orthopedist | 5% | * | | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 |
| Physical Therapy Evaluation | 4% | * | | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 |
| Individual Counseling | 4% | * | | 180.00 | | 180.00 | | |
| Physical Therapy | 4% | * | | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 |
| Case Manager | 4% | | | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Supportive Care/Respite | 4% | | M | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 |
| Home Modifications | 0% | | | 16,094.37 | | | | |
| Light Weight Power Scooter | 4% | | | | | 1,500.00 | 150.00 | 150.00 |
| Battery | 4% | | | | | | 250.00 | 125.00 |
| Service for Power WC | 4% | | | | | | 100.00 | 100.00 |
| Adaptive Aides | 4% | * | | | | | | |
| Walker | 4% | * | | 33.00 | 6.60 | 6.60 | 6.60 | 6.60 |
| Quad Cane | 4% | | | 45.00 | 9.00 | 9.00 | 9.00 | 9.00 |
| Hand Held Sprayer | 4% | | | 45.00 | 9.00 | 9.00 | 9.00 | 9.00 |
| Portable Ramp | 4% | | | | | 268.00 | | |
| Scooter Hitch | 4% | | | | | 2,000.00 | 200.00 | 200.00 |
| Cyclobenzaprine | 5% | * | | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 |
| Lost Earnings | | | | 212,203.99 | | | | |
| Pain and Suffering | | | | 205,000.00 | | | | |
| Past Unreimbursable Expenses | | | | 2,522.24 | | | | |
| Annual Totals | | | | 444,619.80 | 8,520.80 | 10,427.60 | 7,179.60 | 7,054.60 |

Note: Compensation Year 1 consists of the 12 month period following the date of judgment.
Compensation Year 2 consists of the 12 month period commencing on the first anniversary of the date of judgment.
As soon as practicable after entry of judgment, respondent shall make the following payment to petitioner for Yr 1 life care expenses ($24,893.57), lost earnings ($212,203.99), pain and suffering ($205,000.00), and past unreimbursable expenses ($2,522.24): $444,619.80.
Annual amounts payable through an annuity for future Compensation Years follow the anniversary of the date of judgment.
Annual amounts shall increase at the rates indicated above in column G.R., compounded annually from the date of judgment.
Items denoted with an asterisk (*) covered by health insurance and/or Medicare.
Items denoted with an "M" payable in twelve monthly installments totaling the annual amount indicated.